GODFREY Z. REGAN, Judge.
The plaintiff, W. D. Sheets, a recruiter of students, instituted this suit against the defendant, Spencer Business College of Shreveport, Inc.[1], the purchaser of Meadows-Draughon Business College located in Shreveport, Louisiana, endeavoring to recover the sum of $5,382.40, which he asserts is the amount owed to him as a commission based on tuition paid by students he had enrolled in the school.
The defendant answered admitting an indebtedness of $1,175.00[2], and insisted that its liability had been limited to this amount by virtue of an affidavit executed in conformity with the provisions of the Bulk Sales Law.[3]
*28 The defendant then instituted a third party action against Mrs. Annette S. Meadows, Mrs. Julie M. Nelson[4] and the Succession of George A. Meadows, in which it sought judgment for any sum in excess of $1,175.00 that it may be compelled to pay the plaintiff, maintaining its liability had been limited by the affidavit referred to above.
The third party defendants Mrs. Meadows and Mrs. Nelson pleaded various exceptions which were overruled. They then answered and denied liability, insisting that if the plaintiff were owed any sum, Spencer, Inc. had assumed this indebtedness in the act of sale which transferred the Meadows-Draughon Business College to it.
The third party defendants [5] also initiated a counterclaim against Spencer, Inc., alleging the non-payment of a $1,000.00 promissory note representing the last payment in connection with the purchase of the College. Spencer, Inc. answered and admitted the indebtedness and then stated that payment thereof had been withheld to set off any judgment it might be cast for in favor of the plaintiff.
From a judgment in favor of the plaintiff and against the defendant for the sum of $2,704.56, subject to a credit of $1,304.00, and in favor of Mrs. Meadows and Mrs. Nelson for the sum of $1,000.00, subject to a credit of $400.00 and 10% attorney’s fees, the defendant has prosecuted this appeal.
Mrs. Meadows and Mrs. Nelson have answered this appeal in order to request an increase in their award from $600.00 to $1,000.00.
The record reveals ttiat tins controversy emanates from an employment contract entered into by the plaintiff with George A. Meadows, the former owner of Meadows-Draughon Business College, on August 12, 1953, whereby the plaintiff was to solicit students for the school and as remuneration therefor, was to receive 40% commission on the tuition paid by the students he enrolled therein. The plaintiff continued this employment for about a year and was paid commissions as they were earned until September 1, 1954, and was to receive them thereafter when the students actually paid their tuition installments. In December, 1954, Meadows died.
On February 1, 1955, the administrator of the Succession of Meadows, the Commercial National Bank of Shreveport, in anticipation of the sale of the College to Spencer, Inc., executed an affidavit wherein all of the creditors of the school and the amounts owed to them were listed, including the plaintiff’s name together with the sum of $1,175.00. The plaintiff testified he had not been informed of this amount, nor had he been asked to supply any information in the determination thereof.
The president of Spencer, Inc. did write to him, however, on February 8, 1955, which was ten days before the sale, and acknowledged that he recognized that the listed amount was not current and there remained an unliquidated sum of money owed to him.
The act of sale, whereby Spencer, Inc. purchased the College, was passed on February 18, 1955, and recites that the College was sold for $8,700; $5,700 of which was paid in cash, $3,000 of which was represented by three promissory notes in the amount of $1,000.00 each; also as part of the consideration for the sale, Spencer, Inc. agreed *29 to assume, with the exception of a mortgage on the residence of Meadows, all of the debts, obligations, and liabilities of not only the College but the Succession of Meadows and further, to hold the Estate of Meadows free from all present and future claims.'[6]
The act also recited that the sale had been made in conformity with the Louisiana Bulk Sales Law, and that the requisites thereof had been fully complied with.
To reiterate, the plaintiff was paid all commission owed him until September 1, 1954. Thereafter, the plaintiff was able to determine that $6,761.40 had been paid as tuition since September 1, 1954, and that his commission thereon amounted to the sum of $2,704.56.
The defendant had deposited in the registry of the court the sum of $1,304.00, which plaintiff withdrew therefrom. Spencer, Inc. resisted further payments, however, insisting that it had not obligated itself to pay more than'the amount listed in the bulk sales affidavit.
Counsel for the defendant argues that it is entitled to the protection afforded a purchaser under the provisions of the Bulk Sales Law, and that a purchaser may not extend his liability by contract, for to do so, he rationalizes, would certainly obviate the necessity of complying with that Law.
The plaintiff, on the other hand, insists that not only did Spencer, Inc. fail to comply with the provisions of the Law, but assuming that it had complied therewith, it actually contracted away the protection therein provided.
The trial judge accepted the plaintiff’s interpretation of the contractual provisions and consequently found as a matter of law that the defendant Spencer, Inc. had fully assumed the obligation of the third party defendants,’ and accordingly rendered judgment in favor of the plaintiff and also in favor of the third party defendants on their counterclaim.
The only question posed for our consideration is whether the foregoing conclusion of the trial court is correct.
We are of the opinion that the defendant Spencer, Inc. actually extended its liability by virtue of the stipulations contained in the act of sale and therefore the judgment of the trial court in the favor of the plaintiff and against the defendant is correct.
There is no doubt that as part of the consideration of the sale by Meadows to Spencer, Inc. of the Meadows-Draughon Business College, Spencer, Inc., by contract[7] agreed to assume and pay all of the debts and obligations and to perform all of the contracts of both Meadows-Draughon Business College and the Succession of George A. Meadows. The specificness with which these provisions were drawn emphatically discloses that this assumption of the obligations of the College and of the Succession was not perfunctory nor were these provisions intended by the parties to be limited or modified by the Bulk Sales Law.
*30 The evidence adduced on the trial hereof ■clearly shows that the calculation of the indebtedness of Spencer, Inc. to the plaintiff down to the last penny was a rather •difficult matter since it depended upon an accounting of payments of tuition being made at varying times by students who were enrolled in the College. , It is also clear from the record and especially from Spencer, Inc.’s own stipulations contained in the contract of sale, which reflect that it was fully cognizant of the nature and character of this particular indebtedness and of the difficulty of determining the exact amount owed to the plaintiff at the time the affidavit was prepared. This fact is ■emphasized by virtue of the letter which the president of Spencer, Inc. wrote to the plaintiff on February 8, 19SS, which was ten days before the passage of the act of sale, wherein he said:
“ * * * As soon as things quiet down a little, I will settle up with you and have the bookkeeper bring our accounts up to date.”
It is obvious that this specific debt was exactly of the character and type of obligation that Spencer, Inc. intended to assume without qualification in the contract of sale. Therefore, it cannot be heard to say now that the contractual language is either limited or qualified by virtue of the bulk sales affidavit when its president himself recognized in writing that he was fully aware of the existence of this account, its general nature and its semi-liquidated status before the passage of the bulk sale.
The defendant, as the plaintiff has pointed out, is further estopped from asserting that its liability was limited by virtue of the bulk sales affidavit since it failed to comply with the terms of the Bulk Sales Law, which places upon the vendee the burden of paying or ascertaining that the purchase price or other consideration is applied to the payment of the bona fide claims of the creditors.
Spencer, Inc. not only omitted to pay the amount reflected by the bulk sales affidavit, but actually did not pay or offer any payment whatever to the plaintiff until this suit was instituted.
But, assuming arguendo that the Bulk Sales Law had been complied with, an assumption which Spencer, Inc. considers most favorable to its case, this fact would not limit its liability, since Spencer, Inc. intended to extend and did actually extend its liability by virtue of the deliberate and well-considered stipulations contained in the bulk sale and therefore the judgment in favor of the plaintiff is fully justified.
The defendant Spencer, Inc. is likewise estopped both by its written contract to hold Meadows harmless and by its own failure to comply with the Bulk Sales Law from successfully asserting any claim against the heirs of Meadows, that is, the third party defendants.
The trial court in connection with the counterclaim of the third party defendants rendered a judgment in their favor and against Spencer, Inc. in the amount of $1,000.00, subject to a credit of $400.00. We have carefully examined this record and have been unable to discover one scintilla of evidence contained therein in support of this credit. In fact, counsel for the defendant Spencer, Inc. conceded in oral argument before this court that his client had made no payment on account of his final indebtedness to the third party defendants and therefore it was not entitled to any credit.
For the reasons assigned, the judgment of the lower court insofar as it awarded Mrs. Meadows and Mrs. Nelson the sum of $1,000.00, subject to a credit of $400.00, is amended so as to allow no credit, and as thus amended, the judgment is in all other respects affirmed. The defendant Spencer, Inc. is to pay all costs of this appeal.
Amended in part, affirmed in part.

. Hereinafter referred to as “Spencer, Inc.”

. The affidavit listed an outstanding debt of $1,175 which was deposited in the registry of the court. The sum of $129 was also deposited therein which represented commissions on additional tuition payments, thus making a total of $1,304.

.LSAtR.S. 9:2961 et seq.

. They are the widow and daughter, respectively, of George A. Meadows.

. These defendants also initiated a third party action against the Commercial National Bank of Shreveport, the administrator of the Succession of Meadows, alleging negligent settling of the Estate. Further pleadings, a detailed discussion of which is not necessary for the con-«deration of this case, include exceptions pleaded by the Bank, its answer, a third party action by it against Mrs. Meadows, Mrs. Nelson and also by Spencer, Inc. which initiated a third party action against the Bank, The Bank subsequently reurged the exception to the jurisdiction of the Orleans Parish District Court, and in consequence thereof was dismissed from this suit.

. * * *
“(e) Second Party assumes and agrees to pay fully and to discharge completely, in due course, all debts, obligations and liabilities of said business and of the said Succession of George Alvin Meadows, deceased, of every kind and nature, with the exception of the real estate mortgage on the residence, and to perform and liquidate all of the outstanding contracts and obligations of said business and of said estate of whatsover nature and kind;
“(d) To indemnify and hold First Party and/or the Estate of George Alvin
Meadows, deceased, free and harmless from all claims, demands, debts, liabilities, costs and expenses of whatsoever nature existing or that may hereafter arise in connection herewith;”

(The foregoing stipulations appeared in the act of sale.)

. See footnote 6 for pertinent portions of the contract. These stipulations appeared in the act of sale.